IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADVANCED MEDIA NETWORKS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-3496-N |
| | § | |
| AT&T MOBILITY LLC, | § | |
| | § | |
| Defendant. | § | |

# ORDER

This Order addresses Defendant AT&T Mobility LLC's ("AT&T") motion for summary judgment [144]. This Order presumes familiarity with the Court's claim construction Order of March 1, 2017 [125] (the "*Markman* Order") and the terms defined in that Order. The Court's *Markman* Order has the effect of resolving all issues in this case. Specifically, under the Court's *Markman* Order, "ethernet packet switching protocol" does not encompass "internet protocol," or IP, so the Court grants AT&T's motion for summary judgment.

In particular, the construction of two disputed terms is dispositive:

> The Court therefore construes "ethernet packet switching protocol" as meaning "a packet switching protocol defined by the IEEE 802.3 and draft IEEE 802.11 standards as of the filing date of the Patent."

*Markman* Order at 9.

> IP, or internet protocol, is the protocol defined by IETF [Internet Engineering Task Force] RFC [Request for Comment] 791 and its progeny through the filing date of the Patent.

ORDER – PAGE 1

*Markman* Order at 14.

Plaintiff Advanced Media Networks, LLC ("AMN") makes a doomed effort to argue that a reference to IP in a proposal to the IEEE 802.11 working group somehow places IP within the draft IEEE 802.11 standard as of the filing date of the Patent. *See* Draft Inter Access Point Protocol Specification (the "IAPP Document"), Doc. 139, Ex. 2, APPX000007. It does not.

It is not so much an issue of dueling experts as it is the meaning of the word "define" in the constructions quoted above. The Court used that word in the context of the protocol standard development process. *See generally*:

http://standards.ieee.org/develop/process.html (last visited August 23, 2017). As the Court understands the process, the development of a protocol starts with a proposal to a standards development organization ("SDO"), or standard promulgating entity such as the Institute of Electrical and Electronics Engineers ("IEEE") or the Internet Engineering Task Force ("IETF"). If the SDO views the proposal favorably, it initiates a drafting project and convenes a working group. The working group then prepares a draft standard that is released for public comment. Based on the comments, the working group may revise the draft standard and release it again for comment. The process may iterate multiple times. At some point, if the process is successful, the project results in an official standard that is formally adopted by the SDO. It is not graven in stone, but may be periodically revised by the SDO in a similar process.

ORDER – PAGE 2

The Court's intention in using the word "define," then, was to refer to the document adopted by the SDO that officially sets forth the protocol standard. The Court used the word in the sense of "To state precisely or determinately; to specify." *See* http://www.oed.com/view/Entry/48874?redirectedFrom=define#eid (last visited August 23, 2017).

In that context, it is apparent that the IAPP Document does not define IP. Defining a protocol is different from defining a word in a dictionary. IP was defined by IETF RFC 791 and its progeny, as reflected in the Court's construction of that term. This is a matter of historic fact, not a matter of expert opinion. Thus the reference to an IP packet header in the IAPP Document does not bring IP into "ethernet packet switching protocol."

Moreover, the IAPP Document is facially not a draft IEEE 802.11 standard. In the standard-making process described above, a "draft," as the Court used the term, refers to a draft promulgated by the SDO for public comment. In particular, a draft IEEE 802.11 standard, as the Court used the term, would refer to a draft 802.11 standard issued by the IEEE 802.11 Working Group for public comment. The IAPP Document, prepared by Aironet Wireless Communications, Digital Ocean, and Lucent Technologies, is facially a proposal for an extension of the then-current 802.11 draft, i.e., it is a comment, not a draft. So even if the IAPP Document "defined" IP, which it doesn't, that would not place IP within a draft IEEE 802.11 standard.

The Court therefore concludes as a matter of law that "ethernet packet switching protocol" does not include IP, as those terms have been construed by the Court. The rest is easy.

It is undisputed that the accused devices do not use an "ethernet packet switching protocol," as that term has been construed by the Court. Thus the accused devices do not infringe claims 1-3, 9, 42, or 58, and the Court grants AT&T's motion for summary judgment on those claims.

During reexamination AMN added claims 128, 129, 135, 146, 160, 161, 165-67, and 171 (the "IP Claims"), which recite internet protocol instead of ethernet packet switching protocol. A claim added during reexamination is invalid if it is "broader in any respect" than the original claims. *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1580 (Fed. Cir. 1995). *See* 35 U.S.C. § 305 ("No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter."). AMN concedes that a construction of "ethernet packet switching protocol" that does not include IP, as the Court has held, "would render [the IP Claims] invalid under 35 U.S.C. § 305." AMN SJ Brief at 25. Accordingly, the Court grants AT&T's motion for summary judgment that the IP Claims are invalid.[1]

---

[1] In view of the Court's holding on these two points, it is unnecessary to address AT&T's other arguments. The Court overrules AMN's objections to the Wicker Declaration. AT&T's objections to the Denning and Olivier declarations are moot.

ORDER – PAGE 4

## CONCLUSION

The Court grants AT&T's motion for summary judgment.

Signed August 25, 2017.

_____
David C. Godbey
United States District Judge